JACQUELINE M. SALE (CA Bar No. 343485)
JAX LAW OFFICES
18723 Via Princessa #102
Santa Clarita, CA 91387
Telephone: (833) 225-5299
Email: info@jaxlawoffices.com

Counsel for Petitioner-Appellant
Nelson Julian Salcedo Duran

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

No. 26-2608

NELSON JULIAN SALCEDO DURAN,

Petitioner-Appellant,

v.

JIM ARNOTT; SECRETARY MARKWAYNE MULLIN;
FIELD OFFICE DIRECTOR; TODD BLANCHE,

Respondents-Appellees.

On Appeal from the United States District Court
for the Western District of Missouri, Southern Division
Case No. 6:26-cv-03376-MBB
(The Honorable Megan B. Benton)

**EMERGENCY MOTION FOR RELEASE PENDING APPEAL PURSUANT TO FED. R. APP. P. 23(b)**

**RELIEF REQUESTED BY AUGUST 28, 2026**

## EMERGENCY NATURE OF THE MOTION AND REQUESTED DECISION DATE

Petitioner respectfully advises the Court that this motion seeks emergency relief. Petitioner-Appellant Nelson Julian Salcedo Duran is presently confined in immigration custody at the Greene County Jail in Springfield, Missouri, and has been detained since June 9, 2026, a period now exceeding two months. Each day of continued confinement inflicts irreparable harm that no later order can remedy. Petitioner also remains subject to transfer to a distant facility that would impede counsel access, disrupt the orderly administration of this appeal, and frustrate effective interim relief. See Fed. R. App. P. 23(a). That risk is concrete rather than theoretical: Respondents have already moved him once, from Indiana to Missouri, without notice to counsel. Petitioner therefore requests a ruling as promptly as the Court's calendar permits, and in any event on or before August 28, 2026, so that relief, if granted, is not delayed until Petitioner has spent nearly three full months in custody.

Relief was not first sought in the district court because such a request would be futile for the reasons stated in Part II.C below. The district court denied every claim raised in the petition, denied as moot Petitioner's motion for an expedited ruling, and did not address or distinguish the constitutional analysis adopted by a

coordinate judge of the same court and by five other district courts within this Circuit.

On August 14, 2026, undersigned counsel notified counsel for Respondents, Assistant United States Attorney Jeffrey P. Ray, of the filing of this motion and of the relief requested, and advised the Clerk of this Court that an emergency motion was being filed. Counsel for Respondents may be reached at Jeffrey.Ray@usdoj.gov. Undersigned counsel may be reached at (833) 225-5299 and info@jaxlawoffices.com.

Petitioner-Appellant Nelson Julian Salcedo Duran ("Petitioner"), through undersigned counsel, respectfully moves this Court for an order releasing him from immigration custody pending resolution of his appeal, pursuant to Federal Rule of Appellate Procedure 23(b). In support, Petitioner states as follows:

## I. INTRODUCTION

ICE arrested Petitioner at 10:30 a.m. on June 9, 2026, at a scheduled check-in appointment at the ICE Chicago Field Office. Acting Deputy Field Office Director Sandra Salazar did not sign Petitioner's parole termination until 12:42 p.m., two hours and twelve minutes later. ICE detained first and generated the justification after the fact, in violation of 8 C.F.R. § 212.5(e)(2)(i) and the *Accardi* doctrine. The district court denied the habeas petition on July 31, 2026. Petitioner timely appealed. He has been detained for more than two months, separated from his wife

and two young daughters, now ages six and twelve. He seeks release on conditions pending resolution of this appeal.

Petitioner brings this motion directly to this Court because seeking relief from the district court would be futile. The district court denied every claim raised in the petition, rejected arguments that another judge in the same courthouse accepted in a materially identical case, and did not address or distinguish the constitutional analysis that five district courts within this Circuit have applied since this Court's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

## II. STATEMENT OF THE CASE

### A. Factual Background

Petitioner is a citizen of Colombia. He entered the United States on December 19, 2022, near Jacumba, California. He was apprehended by U.S. Border Patrol and, on December 22, 2022, was paroled into the United States under INA § 212(d)(5). For the next three and a half years, Petitioner did everything the government asked of him. He filed for asylum on December 15, 2023, within one year of his arrival. USCIS granted him employment authorization. He obtained employment, paid taxes, and supported his wife, Tania Marcela Lis Aroca, and their two minor daughters, A.S. (born in 2014) and M.S. (born in 2019). See Fed. R. Civ. P. 5.2(a);

Fed. R. App. P. 25(a)(5). He reported voluntarily for every scheduled ICE appointment. He has no criminal history.

Petitioner fled multi-generational FARC persecution in Colombia. His grandfather was murdered by FARC guerrillas. His father-in-law was murdered.

On June 9, 2026, Petitioner walked into the ICE Chicago ERO office for a routine, scheduled check-in appointment, accompanied by his wife and daughters. His daughters, then six and eleven years old, watched what happened next.

At 10:15 a.m., SDDO Mercer signed the Warrant for Arrest. At 10:30 a.m., Deportation Officer R. Szopa served the warrant and took Petitioner into custody. At 12:42 p.m., more than two hours later, DFOD Salazar digitally signed the parole termination letter. The digital signature timestamp reads: “2026.06.09 12:42:14 -05′00′.”

At the same appointment, ICE released Petitioner’s wife on supervised release with an ankle monitor through the BI SmartLINK application. ICE released both daughters on recognizance. ICE detained only Petitioner, without any documented analysis distinguishing him from his spouse or explaining why detention was necessary when supervised release was adequate for every other member of the household.

ICE initially detained Petitioner at the Clay County Justice Center in Brazil, Indiana, then transferred him to the Greene County Jail in Springfield, Missouri, where he remains.

**B. District Court Proceedings**

On June 26, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1), arguing that his detention without bond and his transfer violated the INA, the Due Process Clause of the Fifth Amendment, and the APA. On July 6, 2026, Petitioner filed a traverse demonstrating that ICE's own records contained material errors: the Notice to Appear listed the Clay County Justice Center address as Petitioner's home address rather than his actual Illinois residence; all three status boxes on the NTA identifying Petitioner's classification were left blank; the NTA charged Petitioner as "an alien present in the United States without being admitted or paroled," directly contradicting the government's own parole records and the parole termination letter citing his parole under INA § 212(d)(5); and the Form I-830 filed June 17, 2026, simultaneously checked the boxes for "Detained by ICE" and "Released from ICE custody" for the same detainee on the same form. The government's response did not address a single one of these errors.

On that same date, July 6, 2026, Judge Bough of the same court granted habeas corpus in *Sepulveda-Garcia v. Arnott*, No. 26-cv-03373-SRB (W.D. Mo. July 6,

2026), and ordered the immediate release of a petitioner detained under materially identical circumstances: a Colombian national, paroled in December 2022, employed, no criminal history, compliant with all check-in requirements, arrested at a routine Chicago ERO appointment, and transferred to the Greene County Jail. In that case, DFOD Salazar signed the parole termination at 11:38 a.m., more than two hours after the 9:22 a.m. arrest. Judge Bough found that *Avila*'s "construction of § 1225 does not govern the due process claim asserted herein," applied the *Mathews v. Eldridge* balancing test, found that all three factors favored the petitioner, and ordered release within 48 hours.

On July 31, 2026, the district court denied Petitioner's habeas petition and denied as moot his motion for an expedited ruling (Doc. 6). Order, Doc. 7. The court held that Petitioner was properly detained under § 1225(b)(2)(A) per *Avila*; that his detention did not violate procedural due process because the "legislative scheme" permitted it; and that the two-hour-and-twelve-minute gap between his arrest and the parole termination was not a due process violation sufficient to warrant release. The court did not cite, distinguish, or acknowledge *Sepulveda-Garcia*, decided by a coordinate judge in the same courthouse 25 days earlier on indistinguishable facts.

### C. Futility of Seeking Relief Below

A motion for release pending appeal before the district court would be futile. That court denied every claim in the petition, denied the motion for an expedited ruling as moot, and did not address or distinguish the constitutional analysis that Judge Bough and five other district courts within this Circuit have applied. There is no reason to believe the result would differ on a motion under Rule 23(b).

## III. LEGAL STANDARD

Federal Rule of Appellate Procedure 23(b) provides that while a decision not to release a prisoner is under review, the court of appeals may order that the prisoner be "released on personal recognizance, with or without surety." Fed. R. App. P. 23(b)(3). In this Circuit, release pending disposition of a habeas appeal requires the petitioner to demonstrate both a substantial federal constitutional claim presenting a clear case on the law and a readily evident case on the facts, and an exceptional circumstance deserving special treatment in the interests of justice. *Martin v. Solem*, 801 F.2d 324, 329–30 (8th Cir. 1986). Petitioner satisfies both requirements here. The traditional equitable considerations articulated in the analogous stay context in *Nken v. Holder*, 556 U.S. 418, 434 (2009) — likelihood of success, irreparable injury, injury to other parties, and the public interest — inform that inquiry without displacing it, and each supports release.

## IV. ARGUMENT

### A. Petitioner Demonstrates a Substantial Likelihood of Success on the Merits.

Petitioner's appeal raises three claims independent of the statutory question decided in *Avila*. Each has a substantial probability of success.

#### 1. The *Accardi* Doctrine Violation.

The government's own records establish that ICE arrested Petitioner at 10:30 a.m. and did not sign the parole termination until 12:42 p.m. Section 212.5(e)(2)(i) of Title 8 requires that when DHS terminates parole, it must provide "written notice to the alien" and determine that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." The regulation contemplates that the required determination will be made, and reduced to writing, as the predicate for re-detention rather than as a post hoc justification for it.

Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), when an agency acts in violation of its own binding regulations, the resulting action is unlawful. The district court rejected this argument on the ground that the regulation "does not prohibit DHS from arresting an alien before serving a notice of parole revocation." Petitioner does not contend that § 212.5(e)(2)(i) makes prior written notice a jurisdictional prerequisite to every arrest. The narrower and stronger point is evidentiary. On the government's own timestamps, no officer had made or

documented the humanitarian-and-public-benefit determination the regulation requires at the moment Petitioner was deprived of his liberty. A determination generated two hours and twelve minutes after the fact is not a determination that preceded and justified the detention. Judge Bough, presented with the same pattern in *Sepulveda-Garcia*, where the gap was also more than two hours, ordered release. Release is the fitting interim remedy for this violation. Corrected paperwork cannot restore the liberty taken in the interval between the arrest and the signature, and a remand permitting the agency to re-document a decision it has already executed would leave Petitioner confined while the government supplies what it was required to have before it acted. At a minimum, the appropriate remedy is release on conditions or a prompt individualized custody hearing before a neutral decisionmaker, with the burden on the government.

The *Accardi* claim does not depend on *Avila*. It does not depend on whether § 1225 or § 1226 governs. It turns on a straightforward question: did ICE follow its own regulation? The government's own timestamps answer that question.

**2. Procedural Due Process.**

*Avila* resolved a statutory question: whether § 1225(b)(2)(A) covers noncitizens in the interior who have not been admitted. It did not address the constitutional question whether due process permits the re-detention of a previously paroled individual, after three and a half years of liberty, without any individualized

process. Five district courts within this Circuit have held, post-*Avila*, that the due process question remains open and that the *Mathews v. Eldridge* balancing favors release:

> *Aleksei M. v. Warden*, No. 5:26-CV-05030, 2026 WL 1133615 (D.S.D. Apr. 27, 2026) (ordering release within 48 hours for a paroled noncitizen re-detained after two years without process);
>
> *Chourio Herrera v. Bondi*, No. 0:26-CV-1895, 2026 WL 827571 (D. Minn. Mar. 25, 2026) (ordering immediate release and finding that the government's conduct "offends the very core of due process");
>
> *Muse v. Mullin*, No. 26-CV-4024, 2026 WL 1008532 (N.D. Iowa Apr. 14, 2026) (ordering a bond hearing with the burden on the government);
>
> *David J.C.P. v. Blanche*, No. CV 26-2181, 2026 WL 1102725 (D. Minn. Apr. 23, 2026) (ordering release or a bond hearing and holding that "nothing in the *Avila* opinion, which was decided exclusively on statutory grounds, suggests that any constitutional review is 'legally irrelevant'"); and
>
> *Orlando R.V.V. v. Blanche*, No. 0:26-cv-01903 (D. Minn. Apr. 28, 2026) (granting habeas for a paroled noncitizen whose parole had expired prior to re-detention).

And *Sepulveda-Garcia*, decided by a coordinate judge in the same courthouse, granted habeas on facts materially identical to this case and expressly held that *Avila*'s "construction of § 1225 does not govern the due process claim."

The district court's order does not cite, distinguish, or acknowledge any of these decisions.

The *Mathews* balancing overwhelmingly favors Petitioner. The private interest is at its apex: physical liberty, three and a half years of community ties, employment, and a wife and two young daughters who depend on him. The risk of erroneous deprivation is high: ICE conducted no hearing and no individualized assessment,

and the government's own enforcement documents contain the material errors detailed above. The government's interest is not served by re-detaining a noncitizen it previously determined was not a flight risk or danger, without any showing of changed circumstances, when supervised release was adequate for a spouse similarly situated in every respect reflected in the present record. See *Sepulveda-Garcia*, slip op. at 4 (finding that the government's interest "is not served by re-detaining noncitizen 'applicants for admission' whom the government previously determined were not flight risks or dangers to the community without a showing of changed circumstances").

**3. Absence of Individualized Assessment and Disparate Treatment.**

ICE conducted no individualized assessment before detaining Petitioner. There is no record of any hearing. There was no assessment of flight risk or dangerousness. There was no consideration of his compliance history, his two minor daughters, his pending asylum application (unadjudicated by USCIS since December 2023), or his USCIS-granted employment authorization. The parole termination letter uses boilerplate language with no reference to any case-specific factor.

The disparate treatment of Petitioner's wife is the most probative evidence of arbitrary action. Tania Marcela Lis Aroca is similarly situated to Petitioner in every material respect reflected in the present record: same nationality, same date and place of entry, same parole under INA § 212(d)(5)(A), same charges, same absence

of criminal history, same family unit, and same address. ICE released her on SmartLINK with an ankle monitor. ICE detained Petitioner. The government has never offered any documented reasoning for this disparity. An agency that applies two different outcomes to two members of the same family at the same time, with no documented reasoning, has not conducted the individualized assessment that due process demands.

**B. Exceptional Circumstances Deserving Special Treatment in the Interests of Justice Warrant Release.**

*Martin*'s second requirement is satisfied here by circumstances particular to this Petitioner, not by the importance of the legal question alone. ICE took Petitioner into custody two hours and twelve minutes before any officer signed the determination its own regulation requires. A coordinate judge of the same district court ordered release on materially identical facts twenty-five days before the petition here was denied, and the order under review does not address that decision. ICE released Petitioner's similarly situated spouse on supervised release at the same appointment and detained only him, without documented reasoning. Petitioner was seized at an appointment ICE itself scheduled and at which he appeared voluntarily with his family. The enforcement documents underlying his detention are internally contradictory, charging him as a noncitizen present without having been admitted or paroled while the accompanying parole termination letter

recites his parole under INA § 212(d)(5). And his two minor daughters, then six and eleven years old, watched the arrest. These are not the ordinary incidents of immigration custody. They are the exceptional circumstances *Martin* contemplates, and they make release appropriate in the interests of justice.

The depth of the conflict among the courts of appeals confirms the substantiality of Petitioner's claim and thus bears on *Martin*'s first requirement. The Second, Sixth, Seventh, Tenth, and Eleventh Circuits have rejected the government's position. See *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732–33 (6th Cir. 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026) (reversing denial of habeas and holding that § 1226(a), rather than § 1225(b)(2)(A), governs); *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, 175 F.4th 1258, 1276 (11th Cir. 2026). Only this Court and the Fifth Circuit have reached the contrary conclusion. The question has generated a mature circuit conflict, and petitions for certiorari raising it are pending. Petitioner should not remain detained on a legal theory that a majority of the courts of appeals have rejected.

Within this Circuit, the law on the due process question is unsettled. Judge Bough and five other district courts have granted habeas on due process grounds post-*Avila*. The district court here denied relief without addressing them. That a

petitioner in the same courthouse, on the same facts, obtained release while Petitioner remains confined is a circumstance specific to him and weighs directly in favor of interim relief.

**C. Petitioner Will Suffer Irreparable Harm Absent Release.**

Petitioner has been detained for more than two months. His detention has separated him from his two minor daughters, now ages six and twelve, who were six and eleven when they watched him taken into custody. The Supreme Court has recognized that the "interest of parents in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). His detention removed half of the family's parental and financial support, leaving Ms. Lis Aroca, herself under ICE supervision via an ankle monitor, as the sole caregiver and provider for two young children.

Petitioner's asylum application, filed December 15, 2023, has been held by USCIS for more than two and a half years without adjudication. Continued detention impairs his ability to gather evidence, consult with counsel, and pursue that claim. Courts have recognized that DHS must apply its governing parole procedures to asylum seekers rather than employ a categorical detention policy. See *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337–42 (D.D.C. 2018). The government cannot sit on an asylum application for more than two and a half years, grant work

authorization based on its pendency, and then detain the applicant without process while the application remains unadjudicated.

Each additional day of detention constitutes irreparable harm that no subsequent order can undo.

**D. The Balance of Equities and the Public Interest Favor Release.**

The government has identified no interest specific to this Petitioner that detention serves. He has no criminal history. His NCIC query returned negative. He appeared voluntarily at a government appointment that ICE itself scheduled, the strongest possible evidence that he is not a flight risk. ICE's own Alternatives to Detention program, including SmartLINK monitoring, is routinely used for individuals in the same procedural posture. ICE itself used SmartLINK for Petitioner's wife at the same appointment.

The government currently pays Greene County $100 per day to detain Petitioner. Supervised release through SmartLINK costs a fraction of that amount and fully addresses the government's interest in ensuring Petitioner's appearance at immigration proceedings.

The public interest is served by ensuring that individuals are not subjected to prolonged mandatory detention on a contested legal theory while the federal courts resolve a fundamental question of statutory interpretation. It is not served by the

continued separation of a father from his two young daughters when the government has offered no case-specific reason for his detention.

## V. PROPOSED CONDITIONS OF RELEASE

Petitioner respectfully requests release subject to the same conditions ICE imposed at the same appointment on his similarly situated spouse:

1. SmartLINK monitoring through the BI application;
2. An ankle monitor;
3. Surrender of travel documents (Petitioner's Colombian passport is already held by ICE, having been seized at the time of arrest);
4. Restriction of travel to the Northern District of Illinois or such other area as this Court may direct;
5. Regular reporting to ICE at such intervals as this Court may direct; and
6. Such other conditions as this Court deems appropriate.

## VI. RELIEF REQUESTED

For the foregoing reasons, Petitioner respectfully requests that this Court enter an order:

(a) Granting this Emergency Motion;

(b) Ordering Petitioner's release from immigration custody pending resolution of this appeal, on the conditions set forth above or on such other conditions as this Court deems appropriate;

(c) Enjoining any transfer of Petitioner's custody absent prior authorization under Federal Rule of Appellate Procedure 23(a), or alternatively requiring Respondents to provide advance notice of any proposed transfer to Petitioner and to this Court; and

(d) Granting such other and further relief as this Court deems just and proper.

Dated: August 14, 2026

Respectfully submitted,

/s/ Jacqueline M. Sale

JACQUELINE M. SALE
CA Bar No. 343485
JAX LAW OFFICES
18723 Via Princessa #102
Santa Clarita, CA 91387
Telephone: (833) 225-5299
Email: info@jaxlawoffices.com

Counsel for Petitioner-Appellant
Nelson Julian Salcedo Duran

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,413 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

3. This document has been scanned for viruses with a commercial virus-scanning program and is free of viruses.

Dated: August 14, 2026

/s/ Jacqueline M. Sale
JACQUELINE M. SALE
Counsel for Petitioner-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I electronically filed the foregoing Emergency Motion for Release Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will send a Notice of Docket Activity to the following registered participant:

Jeffrey P. Ray
Assistant United States Attorney
United States Attorney's Office
Email: Jeffrey.Ray@usdoj.gov
Counsel for Respondents-Appellees

/s/ Jacqueline M. Sale
JACQUELINE M. SALE
Counsel for Petitioner-Appellant